In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00377-CR
_____

MELVIN ADALBERTO MORALES-RIVAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR32767

**MEMORANDUM OPINION**

A jury convicted Melvin Adalberto Morales-Rivas of murder and assessed punishment at confinement for life. We affirm the trial court's judgment.

In his sole issue, Morales-Rivas complains that the pretrial photo array and identification violated both article 38.20 of the Texas Code of Criminal Procedure and due process because it was impermissibly suggestive and resulted in his in-court identification by C.R. *See* Tex. Code Crim. Proc. Ann. art. 38.20, § 3(c)(2)(F).

1

According to Morales-Rivas, the photo lineup did not substantially comply with article 38.20 because a blind procedure was not used. *See id.* Morales-Rivas complains that his photo tainted the outcome, because he was the only subject clothed in an orange jail jumpsuit and his photo was the only one with a different color background. Morales-Rivas contends that the subsequent use of the impermissibly suggestive lineup in court violated his due process rights because it gave rise to a very substantial likelihood of irreparable misidentification.

Because the determination of whether a photographic identification procedure was impermissibly suggestive does not turn on an evaluation of the credibility and demeanor of the witnesses, we review the mixed question of law and fact under a *de novo* standard. *See Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). If too suggestive, the procedures followed by police to create a photographic array may be challenged at trial. *See Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). When a pre-trial identification procedure is so suggestive and conducive to mistaken identification, the subsequent use of that identification at trial denies the accused due process of law. *Id.* "An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). "The test is whether, considering the totality of the circumstances, 'the photographic

2

identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999)). However, "a finding that a challenged pretrial identification procedure was not in fact impermissibly suggestive will obviate the need to assay whether under the circumstances it created a substantial likelihood of misidentification." *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

Courts analyze the suggestiveness of a pre-trial photographic identification by examining how police conducted the procedure, as well as the content for the array. *See Burns v. State*, 923 S.W.2d 233, 237-38 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). "Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." *Barley*, 906 S.W.2d at 33. In determining whether an array is impermissibly suggestive, courts also evaluate the content of the photo array itself to determine whether the defendant is the only individual resembling the description of the suspect. *See id.*

Before trial, Morales-Rivas filed a motion to suppress the photo lineup, arguing that Deputy Josh Cummins conducted the lineup an impermissibly suggestive manner. According to Morales-Rivas, his photo was different than the

3

other photos in the lineup, because his photo was the only one with a different color background and he was the only person in the lineup wearing orange jail clothes. Morales-Rivas asserted that Cummins failed to conduct a blind administration as required by article 38.20, because Cummins knew he was the suspect. Morales-Rivas argued that the lineup should be suppressed because the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.

During the trial, defense counsel again moved to suppress the pretrial photo lineup and identification testimony regarding the lineup. Defense counsel objected that the lineup was overly suggestive, because a driver's license photo was used for five of the individuals, but Morales-Rivas was wearing what appeared to be an orange jail uniform in his photo. Defense counsel also complained that Morales-Rivas's photo was the only one with a different color background.

The trial court conducted a hearing concerning the admissibility of the photo lineup. The trial court noted that although Morales-Rivas appeared to be wearing a jail uniform, it was unknown whether the person who identified Morales-Rivas knew what a jail uniform looked like. The trial court stated that Morales-Rivas's photo only included the collar portion, which was a "V-neck, more like a T-shirt[,]" and all the photos appeared to be oriented about the same. According to the trial court, there was "no way to tell" that Morales-Rivas was wearing a jumpsuit. The trial

4

court further noted that five of the photos had a blue background, and Morales-Rivas's photo was "gray, "slightly different." After reviewing the photos in the lineup, the trial court overruled Morales-Rivas's motion to suppress.

At that point, defense counsel requested to present testimony from the officer who prepared the photo lineup and the witness who identified Morales-Rivas. Defense counsel questioned Cummins on voir dire regarding his preparation of the lineup. Cummins testified that Chief Neyland created the photo lineup, and Cummins told Neyland that Morales-Rivas was the suspect. Cummins explained that when he presented the photo lineup to C.R., he shuffled the photos and read the printed lineup instructions. Cummins testified that he did not do anything suggestive when he presented the photo array to C.R. Cummins testified that all the suspects in the photo array had similar identifying characteristics, but Cummins agreed that Morales-Rivas's photo had a different background and that he was the only one wearing an orange shirt. Cummins explained that Morales-Rivas's jail photo was used for the lineup because Morales-Rivas did not have a state photo identification, and when C.R. identified Morales-Rivas in the lineup, C.R. did not say anything about the jail uniform. According to Cummins, C.R. reported that she recognized Morales-Rivas from the night of the incident, and C.R. indicated that she was one-

5

hundred percent certain that Morales-Rivas was the person who committed the offense.

Defense counsel also took C.R. on voir dire. C.R. explained that she was aware that the orange shirt meant that Morales-Rivas was in jail, but C.R. testified that she did not identify Morales-Rivas because he was wearing an orange shirt. C.R. testified that she recognized Morales-Rivas from the night of the shooting, and C.R. explained that she had never seen Morales-Rivas before that night, and had not seen any photos of Morales-Rivas before she identified him in the lineup. The record shows that the trial court found that the photo lineup was not impermissibly suggestive and denied Morales-Rivas's motion to suppress. The record further shows that C.R. testified at trial without objection that she saw Morales-Rivas shoot her husband and that she picked Morales-Rivas's photo from the lineup because she recognized him from the night of the shooting.

Based on the testimony of Cummins and C.R., the characteristics of the men depicted in the array containing Morales-Rivas's photo, and considering all the circumstances surrounding the array, we conclude that the array was not impermissibly suggestive and that the trial court did not err by admitting testimony regarding C.R.'s pretrial identification of Morales-Rivas. *See Barley*, 906 S.W.3d at 33. We further conclude that the array did not create a substantial likelihood that

Morales-Rivas was irreparably misidentified by C.R. when she testified at trial. *See Webb*, 760 S.W.2d at 269. Accordingly, we hold that the trial court did not abuse its discretion by denying Morales-Rivas's motion to suppress. *See Amador v. State*, 275 S.W.3d 872, 878-79 (Tex. Crim. App. 2009); *Loserth*, 963 S.W.2d at 772. We overrule Morales-Rivas's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 5, 2019
Opinion Delivered February 5, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

7